MONROE COUNTY.—HON. J. A. ADLINGTON, SURROGATE.—March, 1886.

KINTZ *v.* FRIDAY.

*In the matter of the judicial settlement of the account of* HENRY P. GATES, *as administrator of the estate of* PHEBE W. GATES, *deceased.*

Upon the judicial settlement of the account of the administrator of the estate of decedent, it appeared that the latter during her lifetime had taken from her daughter, K., a written agreement to pay annual interest upon $800, moneys received by K. from decedent, and that this agreement had been surrendered to the daughter by decedent before her death. K. contended that this was done with an intent, expressed at the time, to cancel the debt.—

*Held,* that the issue thus raised was one which the court had no jurisdiction to try.

A construction of the English statute of *hotchpot,* grounded upon the ancient custom of London, is inapplicable to our law of "advancements."

Holt v. Frederick, 2 *P. Wms.,* 356—disregarded.

An advancement is the *giving* by the intestate in his lifetime, by anticipation, of the whole or a part of what it is supposed the donee will be entitled to on the death of the party making it.

The provisions of 2 R. S., 96, §§ 75–78, relating to the mode of distribution of the personal property of intestates, and including the subject

of advancements made by them to their children during their lifetime, though, in terms, applying to male decedents, govern as to the disposition of the estates of unmarried women and widows. Therefore, where a child of a deceased widow has " been *advanced* by the deceased, by settlement or portion of . . . . . personal estate, the value thereof " must be " reckoned with that part of the surplus of the personal estate which shall remain to be distributed among the children," as prescribed by id., § 76.

HEARING of objections to the account of administrator of decedent's estate, in proceedings for judicial settlement.

M. H. BRIGGS, *for administrator.*

W. D. SHUART, *for Almy M. Kintz.*

THE SURROGATE.—This is a proceeding, instituted by Henry P. Gates, for a judicial settlement of his accounts, as administrator upon the estate of the above named decedent, who died in 1885, intestate, leaving personal property only. She had been a widow for some nine or ten years prior to her death, and left her surviving three adult children, Henry P. Gates, Almy M. Kintz and Sarah Friday. On the return of the citation the parties all appeared in open court, and the account of the administrator was filed, in which it is alleged, among other things, " that the said deceased, in her lifetime, made advancements or loans, to Almy M. Kintz, which, together with two notes made by Almy M. Kintz, . . . . . amount to about $1,800 ; with which sum the said Almy M. Kintz should be charged upon the settlement of said estate, and the amount thereof deducted from any sum which would otherwise be found going to her."

The balance on hand for distribution is stated to be $4,518.20.

Mrs. Kintz, by her counsel, denied that any sum had ever been advanced to her by the decedent, and upon the issue then made testimony was given on both sides. The evidence established, to my satisfaction, that the said Almy M. Kintz had received from her mother, between 1878 and 1883, the sum of $1,800, none of which had been actually repaid. It appeared, however, that, to secure the repayment of $500 of the last mentioned sum, she had given her mother her promissory note dated November, 1882, which the administrator still holds as a part of the assets of the estate. This note was included in the inventory, and admitted by Mrs. Kintz to be a valid obligation, the amount of which would be deducted from her share of the estate to be distributed. It further appeared that another written agreement was given by Mrs. Kintz to her mother, dated March 1st, 1882, to pay interest annually on $800, and stipulating that unpaid interest, more than ninety days past due, should be added " to the principal for next year following."

This state of facts disposes, at the outset of $1,300 of the alleged advancement. I think the evidence shows conclusively that the sums mentioned in the instruments above referred to, were loans, and not in the nature of advancements. The taking of an agreement to pay interest or to repay both principal and interest would tend to show that a loan had been made and not a gift. " An advancement is the *giving* by the intestate in his lifetime, by anticipation, of the

whole or a part of what it is supposed the donee will be entitled to on the death of the party making it" (Grattan v. Grattan, 18 *Ill.*, 170). Taking a note, or a chattel mortgage, indicates a debt and not an advancement (Fennell v. Henry, 45 *Am. Rep.*, 88; West v. Bolton, 23 *Ga.*, 531; Batton v. Allen, 1 *Hal. Ch.*, *N. J.*, 103; Bruce v. Griscom, 9 *Hun*, 280; affi'd, 70 *N. Y.*, 612).

Prior to her death, Mrs. Gates surrendered the agreement for payment of interest on the $800 to Mrs. Kintz, and the latter now maintains that this was done with an intent, expressed at the time, to discharge her from the debt and cancel the same. This is an issue which I have not the jurisdiction to try (Bauer v. Kastner, 1 *Dem.*, 136). It can only be determined in a proper action brought by the administrator, if he shall be advised so to test the question (72 *N. Y.*, 522).

The evidence seems to warrant a finding that the remaining $500, which Mrs. Kintz was known to have received, was an advancement within the meaning of the statute (2 R. S., 97, §§ 76, 77, 78). The amount given was a considerable portion of the mother's entire estate. No evidence was offered tending to show that it was other than a gift. "If the amount given was large, it will be assumed to have been an advance, in the absence of proof to the contrary" (Bruce v. Griscom, 9 *Hun*, 280, 283; Grattan v. Grattan, 18 *Ill.*, 170). The sum so advanced should, therefore, be reckoned with the surplus remaining for distribution, in accordance with the statute, unless the legal objection to that course, now to be considered, is valid.

It is claimed, on behalf of Mrs. Kintz, that the provision of the statute in regard to advancements (R. S., §§ 76, 77, 78, *supra*) only applies to the distribution of the estates of *intestate fathers*, and is not, therefore, applicable to the present case. It is stated in Dayton on Surrogates, p. 563 (3rd ed.), that " this provision applies only to the distribution of the estates of intestate fathers, and, therefore, if a mother, being a widow, advances a child and dies intestate, leaving many children, the child advanced shall not bring what he received from his mother into hotchpot." Similar statements are found in Redfield on Wills (vol. 3, p. 248, par. 19), and in Williams on Executors (6th Am. ed., p. 1607). The only authority cited by these writers, in support of the foregoing proposition, is Holt v. Frederick (2 *P. Wms.*, 356). That is a case, decided by the Chancellor of England in 1726, in which the question now under consideration arose under the following circumstances: Maria Frederick, a widow, died, leaving two sons and a daughter, to the latter of whom she had given in her lifetime £1,000, which sum, upon the settlement of her estate, it was insisted, the daughter should bring into hotchpot. The statute of distribution then in force is partly quoted in the report, as follows : " If a *man* dies intestate, leaving a wife and children, the wife shall have a third and the children the two other thirds." Not enough of the provision, relative to advancement, is stated in the report to be intelligible, but it did not differ materially in principle from our own statutes (Dayton on Surr., 562, 563). The Chancellor ruled, " though without much debate," that the daughter

should not bring the £1,000 into hotchpot, on the principle that the statute was grounded on the custom of London, which never affected a widow's personal estate, and that the act seems to include those alone within the clause of hotchpot who are capable of having a wife as well as children, which must be husbands only. I do not think that an ancient custom of London, the whole theory of which has become obsolete in our law civilization, should now control the interpretation of our statutes. The latter part of the Chancellor's decision is evidently based on a literal interpretation of the language of the statute above quoted.

The portion of our statutes providing for the distribution of the personal property of intestates (2 R. S., 96, § 75) also seems, for the most part, to have had in view the distribution of the estates of males only; but it was provided by Laws of 1830, ch. 20, § 16 (1 R. S., 7th ed., 124) that, "when in the Revised Statutes, or in any other statute, any party or person is described or referred to by words importing . . . . the masculine gender, . . . . . females as well as males shall be deemed to be included;" and the strictness of construction of the statute of distributions which seems to have prevailed in Holt v. Frederick would, therefore, be no longer tolerated or permissible.

It has been the practice in all the Surrogate's courts of this State, since the Revised Statutes were adopted, to distribute the personal estates of single women and widows, as well as of men, dying intestate, in accordance with the provisions of § 75 above referred to,

and it has never been suggested that this practice was other than proper and lawful. Sections 76, 77 and 78 are evidently designed as a complement of that section, in all cases in which their application is needful, to secure equality among the children of an intestate parent.

My conclusion is, therefore, that the case of Holt v. Frederick is not an authority which should be regarded in the decision of this question; and I hold that the advancement of $500, aforesaid, must be reckoned as a part of the surplus to be distributed under the statute.